IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 16, 2011 Session

## STATE OF TENNESSEE v. JIMMY LEE HEARD

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-58542A     Don R. Ash, Judge**

_____

**No. M2010-01030-CCA-R3-CD - Filed March 5, 2012**

_____

The Defendant, Jimmy Lee Heard, was convicted of criminal conspiracy to commit aggravated robbery, a Class D felony; aggravated robbery, a Class B felony; and evading arrest, a Class D felony. He pleaded guilty to attempted second degree murder. The trial court sentenced him as a Range II, multiple offender to an effective sentence of twenty-nine years in the Tennessee Department of Correction. On appeal, he argues that the trial court erred by denying his motion for recusal and by imposing consecutive sentences. He further contends that the evidence was insufficient to support his conviction for conspiracy to commit aggravated robbery. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DONALD P. HARRIS, SR. J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

Brad W. Hornsby (at trial and on appeal), James T. Pinson (on appeal), and J. D. Driver (at trial), Murfreesboro, Tennessee, for the appellant, Jimmy Lee Heard.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Jude P. Santana and J. Paul Newman, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Background**

This case concerns the September 15, 2005, robbery of a Cash Express store in Murfreesboro, Tennessee, and the subsequent pursuit of the robbers by police. A grand jury

indicted the Defendant for criminal conspiracy to commit aggravated robbery, aggravated robbery, attempted first degree murder, aggravated assault, felony evading arrest, and felony possession of a weapon. The State dismissed the felony possession of a weapon charge prior to jury selection.

At trial, Murfreesboro Police Officer Mike Luzadder testified that he responded to a robbery at the Cash Express on the corner of Broad Street and Medical Center Parkway on September 15, 2005. He took the initial report.

Gerlinde "Linda" Cupples testified that she was the store manager of Cash Express on September 15, 2005. She explained that Cash Express provided payday and title loans. On September 15, she was working alone. The cash balance at the beginning of the day was $3,003.56, some of which was in a cash drawer while the rest was in a safe. After lunch, a young black male wearing a "do-rag" came into the store, asking to use the restroom. She told him that there was not a restroom, and he left. He got into the backseat of a blue-green car parked outside. Two other passengers were in the car. Approximately one minute later, the three people in the car came inside the store, one of whom was the Defendant. Ms. Cupples testified that the Defendant jumped over the store's counter, took her by the elbow, and walked her to the break room in the back of the store. She said that he had a gun. He asked her whether anyone else was there, and when she replied that she was alone, he returned to the front of the store. The Defendant came back to get her to unlock the cash drawer. He asked if there was any more money, and she replied that the remainder was in the safe. The Defendant told her to go back to the break room and undress. When she told him that she was pregnant, "he said he didn't want any." He asked for the surveillance tape, and she explained that the recording was made at the store's home office. The Defendant told her to continue undressing, and she complied. She "heard speeding tires," and the car was gone. She called 9-1-1 from her cell phone because the store's phone "had been ripped out of the wall." She also called her district manager and family members. Ms. Cuddles identified still pictures from the surveillance camera that depicted the Defendant, the other two robbers, and herself during the robbery. She testified that after the robbery, she determined that approximately $1300 had been taken from the cash drawer and that the safe, taken by the robbers, had contained approximately $1900 in cash as well as long distance phone cards and business checks. Later that day, the police requested her key to the safe.

Renee Adamson testified that in September 2005, she was the assistant manager at Cash Express. She was responsible for determining the amount taken in the robbery. The report she generated showed that $3208 was missing.

Murfreesboro Police Detective Jennifer West testified that on September 15, 2005, she was on duty in her unmarked police car. She heard a broadcast about the robbery of Cash Express and the description of the robbers and their car. Detective West parked on an

-2-

access road parallel to Old Fort Parkway and watched for a car matching the description. She eventually saw a small blue car with three passengers. She could tell that the two passengers were male, but she could not tell the gender of the driver. Detective West said that the driver had long braids and was wearing a yellow shirt. She followed the car and observed that the passenger in the back seat would turn around "every so often just to look." She advised dispatch of the car's license plate number. She was directly behind the vehicle when it took the ramp onto Interstate 24. Detective West advised dispatch that she would pull the car over and initiated her lights and siren. The car continued onto the interstate, and she pursued. Detective West testified that the car reached a speed of 110 to 120 miles per hour. Her car could not keep up, so she terminated her pursuit. Fifteen to twenty minutes later, she learned that the car had crashed, and she went to the scene. Detective West testified that it appeared to be the same car she had earlier pursued.

Smyrna Police Sergeant Andy Miller testified that the Murfreesboro Police Department contacted the Smyrna Police Department on September 15, 2005, to advise them that it had an officer in pursuit of an armed robbery suspect's vehicle, traveling on Interstate 24. Sergeant Miller positioned himself on Old Nashville Highway in case the suspect left the interstate. Another Smyrna officer, Officer Huey, pursued the suspect southbound on Old Nashville Highway, and Sergeant Miller joined the pursuit. At one point, the vehicle being pursued slowed almost to a stop and "several shots [were] fired from the suspect['s] vehicle at Officer Huey."

Murfreesboro Police Sergeant Cary Gensemer testified that he supervised the investigation of the Cash Express robbery. He sent out a description of the suspects and authorized Detective West to pursue the vehicle. Over the radio, he heard that the Smyrna officers chased the suspects and were fired upon. When the suspects drove back into Murfreesboro, he authorized units to pursue and learned that the suspects were traveling down a road close to the Cash Express store. He deployed stop sticks onto the road as the suspects approached and succeeded in flattening the car's tires. When "the vehicle had a collision," he assisted with apprehending the suspects.

Smyrna Police Officer Casey Huey testified that on September 15, 2005, he and other Smyrna officers were dispatched to the Interstate 24 exit ramps to assist a Murfreesboro detective who was pursuing three black males in a blue Dodge Intrepid. He was driving toward the Almaville exit ramp when he encountered the Intrepid. Officer Huey passed the Intrepid to verify that it was the correct vehicle and then turned around to follow the car. He activated his patrol car's video and emergency equipment. He pursued the vehicle as it turned right on Old Nashville Highway. At one point, the driver of the Intrepid, identified by Officer Huey as the Defendant, fired gunshots at him. Officer Huey took evasive measures but continued the pursuit until the Intrepid ran over spike strips deployed by a Murfreesboro officer. The Intrepid crashed into a civilian car, and the Defendant and the two

passengers fled the scene on foot. Officer Huey testified that the Defendant had long braids and was wearing a yellow shirt. Officer Huey followed the Defendant into a wooded area where he lost sight of him. When he exited the wooded area, he observed a Smyrna officer and a Murfreesboro officer handcuffing the Defendant. They placed the Defendant in Officer Huey's car. Officer Huey testified that he searched for the gun used by the Defendant but did not find it. He believed the Defendant told him that he had left it in the car. Officer Huey said that he returned to the Intrepid and observed a safe in the back seat.

Murfreesboro Police Detective James Boske testified that he searched Old Nashville Highway for any type of evidence related to the Cash Express robbery and the subsequent pursuit. He found three bullet casings near the West Fork Stones bridge. Detective Boske said that he later viewed the video of the chase and determined that the area where he found the casings was approximately the same location where shots were fired from the Intrepid.

Murfreesboro Police Officer Keith Sanders testified that he filled out the accident report after the Intrepid collided with a Ford F-250. He also made photographs of the vehicles involved in the collision that were introduced into evidence.

Murfreesboro Police Lieutenant Sanders Watson testified that he set up a perimeter after the suspects crashed. He located the Defendant hiding in a row of trees. At first, the Defendant ran for approximately twenty-five feet, but he followed Lieutenant Watson's orders and came out of the trees. Another officer patted the Defendant down in Lieutenant Watson's presence but did not find a weapon.

Murfreesboro Police Officer Chris Waters testified that he searched the Defendant after he was apprehended. He found a large amount of cash in the Defendant's right front pocket, which he turned over to Murfreesboro Police Detective Lieutenant Billy Gay. He did not count the amount. Detective Lieutenant Billy Gay testified that $1308 was found in the Defendant's pocket.

Murfreesboro Police Investigator Kerry Thorpe testified that he opened the safe found in the backseat of the Dodge Intrepid with a key obtained from an employee of Cash Express. He further testified that the safe contained $1900 in cash, Cash Express business checks number 2096 through 2299, nineteen prepaid phone cards valued at $25 each, ten $10 prepaid phone cards, and a blue bag.

Smyrna Police Detective-Sergeant Jeff Duke testified that he spoke with the Defendant after his apprehension. He informed the Defendant of his rights and asked him where his gun was. The Defendant replied "that he thought he left it in the vehicle."

Murfreesboro Police Detective Chris Ashley testified that he spoke with the Defendant twice, once after he was apprehended at the scene of the crash and once at the

police station. The Defendant informed him that he drove the vehicle and that he had left the gun in the car. The Defendant also stated that the other suspects had handled the gun. Detective Ashley did not locate the gun on September 15, 2005.

Murfreesboro Police Detective Mark Garvey testified that he searched the area near the crash scene the following day, September 16. He located a stainless steel .380 semi-automatic handgun "ten feet inside the woods behind the business of Animal City[,]" approximately 100 yards from the intersection where the Defendant crashed. The magazine of the handgun was partially ejected.

Murfreesboro Police Lieutenant Alvin Baird testified that he transported three bullet cartridges, the handgun, and the handgun's magazine to and from the Tennessee Bureau of Investigation ("TBI") crime laboratory. TBI Special Agent Tommy Heflin, a forensic scientist assigned to the firearms identification unit, testified that his testing revealed that the three bullet cartridges associated with this case had been fired from the handgun submitted to the TBI. On cross-examination, Agent Heflin testified that the TBI fingerprint analyst did not locate any identifiable prints on the handgun. On re-direct examination, he said that it was uncommon to find fingerprints on handguns because "due to the condition of the firearm, the oiliness of the firearms, fingerprints do not adhere well to the surface of the metal."

Murfreesboro Police Detective Craig Snider testified that he interviewed Linda Cupples and the three men arrested for robbing the Cash Express store: the Defendant, Aaron Giles, and Samuel True. He identified each suspect in a still photograph taken from the store's surveillance video of the robbery. Detective Snider also identified a t-shirt recovered from the Defendant after his arrest, and he testified that the t-shirt appeared to be the same as the t-shirt worn by the Defendant in the still photograph.

Following the close of proof and deliberations, the jury convicted the Defendant of criminal conspiracy to commit aggravated robbery; aggravated robbery; Class D felony evading arrest; and the lesser-included offense of attempted second degree murder. The jury acquitted the Defendant of the charge of aggravated assault. The trial court sentenced him as a Range II, multiple offender to eight years for conspiracy to commit aggravated robbery; fifteen years for aggravated robbery; fifteen years for attempted second degree murder; and six years for Class D felony evading arrest. Furthermore, the trial court ordered the Defendant to serve the sentences consecutively, for an effective sentence of forty-four years.

The Defendant filed a timely motion for new trial, arguing *inter alia*, that the trial court erred in its jury instructions regarding the lesser included offenses of attempted first degree murder. The trial court granted a new trial as to the Defendant's conviction for attempted second degree murder; however, the trial court denied the motion as to the

Defendant's other convictions and reserved the determination of the issue of the propriety of the Defendant's sentences until after his new trial for attempted first degree murder. The State appealed the trial court's grant of a new trial, but this Court upheld the trial court's decision. *State v. Jimmy Heard*, No. M2007-01805-CCA-R3-CD, 2009 WL 723527, at *1 (Tenn. Crim. App. Mar. 18, 2009). Rather than having a new trial, the Defendant pleaded guilty to attempted second degree murder on March 22, 2010, and the trial court sentenced him to fifteen years as a Range II, multiple offender, to run concurrently with his other sentences. On April 5, 2010, the trial court issued an order that affirmed the Defendant's sentences, dismissed a petition for a writ of habeas corpus relief brought by the Defendant, and denied the Defendant's outstanding motions. The Defendant filed a notice of appeal on May 3, 2010, the timeliness of which is at issue in this appeal.

## ANALYSIS

On appeal, the Defendant argues that the trial court erred by denying his motion for recusal and by imposing consecutive sentencing. Additionally, the Defendant avers that the evidence was not sufficient to sustain his conviction for criminal conspiracy to commit aggravated robbery. In response, the State contends that the Defendant's notice of appeal was untimely and seeks dismissal of the appeal.

### I. Notice of Appeal

Initially, we shall consider the State's argument that the Defendant's notice of appeal was untimely. The Defendant counters that the thirty days to file the notice of appeal began to run after the trial court's April 5, 2010, order, which he argues disposed of the Defendant's motion for new trial. A notice of appeal must be filed within thirty days after the date of entry of the judgment from which the petitioner is appealing. Tenn. R. App. P. 4(a). A notice of appeal is not jurisdictional, and the requirement for a timely notice of appeal may be waived in the interest of justice. *Id.* The trial court entered the original judgments in this case on April 2, 2007. After the State's appeal and the Defendant's guilty plea, the trial court entered the judgment for attempted second degree murder on March 22, 2010. The notice of appeal for all of the Defendant's convictions was filed on May 3, 2010, past the thirty-day limitation and, thus, was untimely. However, we have determined that the interest of justice requires waiver of the limitation and conclude that the Defendant's appeal is properly before this Court.

### II. Motion for Recusal

The Defendant argues that the trial judge abused his discretion by denying the Defendant's motion for recusal of the judge. Specifically, he contends that the judge improperly used a subjective standard rather than an objective standard when ruling on the

motion. Furthermore, he avers that the facts and circumstances behind the motion required the judge to recuse himself. The State responds that the Defendant presented no basis for his allegations against the trial judge and, thus, the trial judge did not abuse his discretion in denying the motion.

A trial judge should recuse himself whenever the judge has any doubt as to his ability to preside impartially or whenever his impartiality can reasonably be questioned. *Pannell v. State*, 71 S.W.3d 720, 725 (Tenn. Crim. App. 2001). "The test in determining whether recusal is necessary is an objective one, 'since the appearance of bias is as injurious to the integrity of the judicial system as actual bias.'" *State v. Odom*, 336 S.W.3d 541, 575 (Tenn. 2011) (quoting *Bd. of Prof'l Responsibility v. Slavin*, 145 S.W.3d 538, 548 (Tenn. 2004)), *cert. denied*,__ U.S. __, 132 S.Ct. 397 (2011); *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). "Thus, while a trial judge should grant a recusal whenever the judge has any doubts about his or her ability to preside impartially, recusal is also warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Alley*, 882 S.W.2d at 820. The trial judge retains discretion over his recusal. *Odom*, 336 S.W.3d at 575. Unless the evidence in the record indicates that the trial judge clearly abused his discretion by not disqualifying himself, this court will not interfere with his decision. *Id.*; *see also State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995).

On June 21, 2006, the trial court held a hearing to address the Defendant's motion for recusal and motion for counsel to withdraw. The motion for recusal is not in the appellate record before this Court. During the motions hearing, the trial court stated, "Well, I'll go ahead and deny the motion to recuse," and allowed the Defendant to address the other motion before the court. While addressing the trial judge, the Defendant asked about the motion for recusal and alleged that the trial judge had ex parte communications. The trial judge stated that someone from the Sheriff's Office had informed him of a threat but that he would give the Defendant a fair trial:

> [T]he motion to recuse [is] in my discretion. I decide whether I can give you a fair trial or not. And to be honest[,] I'm not being disrespectful. I don't care if you threatened me or not. It's not the first time. It's not going to be the last. I'm not angry with you at all. I'm going to give you a fair trial. So, no, sir. I'm not going to recuse myself.
> . . . .
>
> I think they have the right to call me and make me aware of a threat.
> . . . .

-7-

> I disclosed it just like I'm supposed to. And I ruled accordingly.
> I disclosed it in open court. You did what you're supposed to.
> You filed a motion to recuse. I've ruled on it and denied it.

From the transcript of the motions hearing, it is apparent that the trial judge had addressed the matter on an earlier date, but the record is devoid of any transcript of that proceeding.

The Defendant complains that the trial judge used a subjective standard when determining whether to recuse himself, and based on the transcript of the June 21, 2006, motions hearing, we would agree. The record, however, is totally devoid of any evidence to support the Defendant's contention that the trial judge should have recused himself. Furthermore, the motion for recusal is not in the record, nor is the transcript of the proceeding alluded to during the June 21 hearing.[1] "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993). We conclude that the record is insufficient for this Court to consider the merits of the Defendant's argument.

### III. Sufficiency of the Evidence

The Defendant challenges the sufficiency of the evidence to support his conviction for criminal conspiracy to commit aggravated robbery. Specifically, he argues that there was no direct evidence to support the conviction and that the circumstantial evidence fell short of the requirement that circumstantial evidence be inconsistent with innocence and exclude every other reasonably theory except that of guilt. The State responds that the evidence was sufficient under the standard set by *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

It is well-established that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of

---

[1] We note that the record contains a motion for the trial judge to recuse himself from presiding over the Defendant's second trial on the attempted first degree murder charge; however, that motion is not the subject of this appeal.

fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see also* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002).

A defendant may be convicted on the basis of direct or circumstantial evidence or a combination of both. *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003); *see also State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In fact, circumstantial evidence alone may be sufficient to support a conviction. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987). Moreover, the state does not have the duty to exclude every other hypothesis except that of guilt. *See State v. Dorantes*, 331 S.W.3d 370, 380 (Tenn. 2011) (adopting the United States Supreme Court standard that the jury is only required to weigh evidence, whether direct or circumstantial, against the reasonable doubt standard); *see also State v. James*, 315 S.W.3d 440, 455 n. 14 (Tenn. 2010) (noting that federal courts have rejected the notion that the government has a duty to exclude every other hypothesis save that of the defendant's guilt). "Circumstantial evidence in this respect is intrinsically no different from testimonial evidence." *Holland v. United States*, 348 U.S. 121, 140 (1954). Therefore, when considering the sufficiency of evidence, we treat direct and circumstantial evidence the same.

> Tennessee Code Annotated section 39-12-103(a) defines conspiracy:
> The offense of conspiracy is committed if two (2) or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense.

Aggravated robbery is an intentional or knowing theft of property from the person of another using violence or fear and accomplished with a deadly weapon or an article used to lead a victim to reasonably believe it to be a deadly weapon. *See* Tenn. Code Ann. §§ 39-13-401(a), -402(a).

Viewed in the light most favorable to the State, the evidence at trial showed that one of the Defendant's accomplices entered the Cash Express store asking for a restroom. Upon being informed by Mrs. Cupples that the store did not have one, the accomplice left the store and sat in the backseat of a car, with two men in the front seat. Soon thereafter, all three men entered the store. Mrs. Cupples testified that the Defendant had a handgun and ordered her to open the cash drawer. The Defendant took the cash from the drawer, and he and his accomplices took the safe. After his arrest, law enforcement officers found an amount equal to that taken from the drawer in his pocket and found the safe in the car he had been driving. While there was no direct evidence of an agreement among the three men to commit the robbery, the evidence that one of the accomplices entered and exited the store immediately prior to all three men entering and committing the robbery allowed the jury to make a rational inference of an agreement to commit the robbery. Thus, we conclude that the evidence was sufficient for a rational trier of fact to find the Defendant guilty of conspiracy to commit aggravated robbery.

## IV.  Consecutive Sentencing

The Defendant contends that the trial court erred in imposing consecutive sentencing in this matter. Specifically, the Defendant argues that a finding that he has an extensive criminal record when the court has already found that he is a Range II offender goes against policy considerations. Furthermore, he argues that the trial court erred by not making factual findings to support its finding that the Defendant was a dangerous offender.

An appellate court's review of a challenged sentence is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The Sentencing Commission Comments to this section of the statute indicate that the defendant bears the burden of establishing that the sentence is improper. When the trial court follows the statutory sentencing procedure and gives due consideration to the factors and principles relevant to sentencing, this court may not disturb the sentence. *See State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008).

The trial court sentenced the Defendant as a Range II, multiple offender. As such, he was subject to sentences of four to eight years for felony evading arrest (Class D); six to ten years for conspiracy to commit aggravated robbery (Class C); twelve to twenty years for aggravated robbery (Class B); and twelve to twenty years for attempted second degree murder (Class B). After applying enhancement factors, the trial court sentenced the Defendant to six years for felony evading arrest, eight years for conspiracy to commit aggravated robbery, fifteen years for aggravated robbery, and fifteen years for attempted aggravated robbery. The trial court originally ordered all sentences to run consecutively, but after the State's appeal and Defendant's subsequent guilty plea to attempted second degree murder, the trial court ordered that the Defendant's fifteen-year sentence for attempted

second degree murder run concurrently with his other sentences. The remaining sentences remained consecutive, giving the Defendant an effective sentence of twenty-nine years.

Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of following statutory criteria apply:

> (2) [t]he defendant is an offender whose record of criminal activity is extensive;
>
> (4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

Tenn. Code Ann. § 40-35-115(b).

Specific findings that an extended sentence is necessary to protect society and is reasonably related to the severity of the offenses are prerequisites to consecutive sentencing under the "dangerous offender" category in Tennessee Code Annotated section 40-35-115(b)(4). *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). These findings are not required for the other categories of Tennessee Code Annotated section 40-35-115(b). *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999). Nevertheless, the general principles of sentencing require that the length of the sentence be "justly deserved in relation to the seriousness of the offense" and "be no greater than that deserved for the offense committed." *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (citing Tenn. Code Ann. §§ 40-35-102(1) and -103(2)).

In this case, the trial court imposed consecutive sentencing based on findings that the Defendant had a record of extensive criminal activity and was a dangerous offender. The record supports the trial court's finding that the Defendant had an extensive criminal record: beyond the two felony convictions used to calculate the Defendant's sentencing range, he had three felony convictions and four misdemeanor convictions. This Court has previously held that consideration of prior criminal activity for both enhancement and consecutive sentencing purposes is allowed. *State v. Meeks*, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993); *see also State v. Davis*, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991). As such, the record supports the court's finding that the defendant had an extensive criminal history. This finding alone justifies consecutive sentencing. *See* Tenn. Code Ann. § 40-35-115(b)(2).

We note that the trial court did not cite specific facts to support its finding that the Defendant was a dangerous offender, but the court stated that it found that the *Wilkerson* factors applied. Without the factual support, the trial court erred by finding that the Defendant was a dangerous offender. *See State v. Matthew Joseph Carter*, No.

E2009-00217-CCA-R3-CD, 2010 WL 4324386, at *9 (Tenn. Crim. App. Nov. 2, 2010). Nevertheless, we affirm the trial court's imposition of consecutive sentencing based on the court's finding that the Defendant had a record of extensive criminal activity.

**Conclusion**

Based on the foregoing reasons, we affirm the trial court's judgments.

_____
DONALD P. HARRIS, SENIOR JUDGE